UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:08-CV-45-F

| | | |
|---|---|---|
| SOUTHEAST COASTAL | ) | |
| DEVELOPMENT FUND, LLC, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | O R D E R |
| | ) | |
| REBECCA R. CRUSE, JOSEPH K. | ) | |
| CRUSE, INTEGRITY FINANCIAL | ) | |
| SERVICES, INC., KIRSTEN E. | ) | |
| FRANKLIN, and THE FRANKLIN | ) | |
| GROUP OF SOUTH FLORIDA, P.A. | ) | |
| d/b/a THE FRANKLIN GROUP, P.A., | ) | |
| Defendants. | ) | |

This matter is before the court on the motion of Plaintiff Southeast Coastal Development

Fund, LLC ("SCDF") for default judgment against Defendants Rebecca R. Cruse, Joseph K. Cruse,

and Integrity Financial Services, Inc. (collectively, the "Cruse defendants").

## I. RELEVANT PROCEDURAL HISTORY

SCDF initiated this action against Kirsten E. Franklin, The Franklin Group of South Florida,

P.A. d/b/a The Franklin Group, P.A.[1] (collectively, "the Franklin defendants") and the Cruse

defendants on February 5, 2008, alleging claims for (1) violations of the Racketeer Influenced and

Corrupt Organizations ("RICO") Act pursuant to 18 U.S.C. § 1962(c); (2) conspiracy to violate the

RICO Act pursuant to § 1962(d); (3) failing to comply with the statutory requirements governing

loan brokers as set forth in N.C. Gen. Stat. § 66-111; (4) common law fraud; (5)constructive fraud;

---

[1] Defendant The Franklin Group of South Florida, P.A., d/b/a The Franklin Group, P.A.
originally was identified by "The Franklin Group, P.A." in the first complaint.

(6) breach of fiduciary duties; (7) two claims for violation of North Carolina's Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1, *et seq.*; (8) breach of contract, and (9) civil conspiracy. *See* Compl. [DE-1]. This is the second action instituted by SCDF, a North Carolina real estate development company, alleging it was a victim of "Advance Fee Fraud" in connection with its attempts to secure financing for an alleged real estate transaction involving a 972-acre tract of real property along the Cape Fear River in Pender County, North Carolina.[2]

The record shows that the Cruse defendants were served by "substitute service" to Jonathan Lund, the manager of the mailbox service where each of the Cruse defendants maintained a private mailbox. *See* FED. R. CIV. P. 4(e)(1) (providing that an individual may be served by following state law where the service is made); FED. R. CIV. P. 4(h)(1)(providing for service on a corporation in the same manner provided under Rule 4(e)(1)); Fla. Stat. § 48.031(6)("If the only address for a person to be served, which is discoverable through public records, is a private mailbox, substitute service may be made by leaving a copy of the process with the person in charge of the private mailbox, but only if the process server determines that the person to be served maintains a mailbox at that location."). *See also* Motion for Entry of Default [DE-13], Affidavits of Service. None of the Cruse defendants filed a responsive pleading to the Complaint, and the Clerk of Court for the Eastern District of North Carolina entered default against the Cruse defendants on April 23, 2008. *See* Entry of Default [DE-15]. SCDF thereafter filed two Amended Complaints, but did not assert new claims for relief against the Cruse defendants.

---

[2] The first action filed by SCDF was *Southeast Coastal Development Fund, L.L.C. v. Commercial Real Estate Financing, Inc. and Terry L. Smith*, 5:08-CV-15-F.

2

In an order filed on October 27, 2009 [DE-67], the court observed that a Report of Mediator [DE-66] was filed on October 15, 2009, indicating that the claims against the Franklin defendants were dismissed with prejudice, and directed the parties to file a stipulation of dismissal on or before November 13, 2009. The court also ordered SCDF to reduce its claims against the Cruse defendants to judgment on or before November 13, 2009. SCDF filed a Stipulation of Dismissal [DE-68] as to its claims against the Franklin defendants on October 29, 2009, and filed a motion for extension of time to file the motion for default judgment. The court allowed the motion, and SCDF timely filed a motion for default judgment [DE-71] against the Cruse defendants on December 18, 2009, seeking damages in the amount of $174,518,120.00. None of the Cruse defendants have filed a response to the motion for default judgment.

## II. DISCUSSION

SCDF's Motion for Entry of Default Judgment raises three issues for this court: First, is entry of default judgment appropriate under Rule 55? Second, has SCDF adequately stated its claims such that the court may enter default judgment thereon? Third, to what relief is SCDF entitled?

### A. Propriety of Default Judgment

This court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1367. Service on the Cruse defendants was obtained in accordance with Rule 4 of the Federal Rules of Civil Procedure, as described above, and the court is satisfied from the pleadings in the complaints that it has personal jurisdiction over the Cruse defendants. The Clerk of Court having filed entry of default on February 1, 2005, the court concludes that the procedural requirements for entry of default judgment have been met.

3

## B. Causes of Action

Although SCDF meets the technical requirements for entry of default judgment, the inquiry does not stop there. It is well settled that upon default, the facts alleged in the Complaint are deemed admitted. *See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001). The court, however, determines whether the facts, as alleged, support a claim and the relief sought. *Id.*

In the Motion for Entry of Default Judgment, SCDF indicates that it seeks damages, including lost profits, but it does not indicate which claim, or claims, upon which it seeks judgment. SCDF has alleged ten separate claims for relief in a voluminous 69-page complaint. Rather than assess, claim-by-claim, whether SCDF has included sufficient factual allegations to support each of the ten claims, the court will examine SCDF's claim for fraud against the Cruse defendants.

To establish a claim for fraud, a plaintiff must allege the following elements: "(1) False representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injur[ed] party." *Ragsdale v. Kennedy*, 286 N.C. 130, 138, 209 S.E.2d 494, 500 (1974). Additionally, a plaintiff must plead a claim for fraud with particularity. *See* FED.R.CIV.P. 9(b)("In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."). In the context of fraud claims, courts have determined that the particularity requirement "is met by alleging the time, place and content of the fraudulent representation, identity of the person making the representation and what was obtained as a result of the fraudulent acts of representations." *Terry v. Terry*, 302 N.C. 77, 85, 273 S.E.2d 674, 678 (1981).

4

In this case, SCDF has alleged sufficient facts to state a claim as to each of the Cruse defendants. *See* Amended Complaint [DE-63] ¶¶ 29-42, 44-47.

### C. Relief

SCDF seeks damages in the amount of $174,518,120.00 against the Cruse defendants, jointly and severally. This request for damages includes: (1) a $315,000.00 money deposit paid to Integrity Financial Services' attorney for the benefit of Integrity Financial Services; (2) interest of $14,338.00 paid to Four Oaks Bank & Trust Company on the $315,000 money deposit; (3) $100,000.00 in earnest money paid to the sellers of the Pender County parcel after SCDF and Integrity Financial Services reached an agreement, and (4) lost profits in the amount of $174,164.782.00.

"It is a well-established principle of law that proof of damages must be made with reasonable certainty." *Olivetti Corp. v. Ames Business Sys., Inc.*, 319 N.C. 534, 546, 356 S.E.2d 578, 585 (1987). In this case, there is sufficient proof before the court to conclude that SCDF has proven its claim, with reasonable certainty, for damages based on the money deposit, interest on the money deposit, and earnest money. The court cannot, however, reach that conclusion with regard to its claim for lost profits.

Lost profits are recoverable in tort actions, if a plaintiff can show they are "the natural and probable result of the tort-feasor's misconduct." *Id.* at 545, 356 S.E.2d at 585. Although the North Carolina Supreme Court has rejected a *per se* rule against an award for future lost profits to a new business, the party seeking such damages still "must show the amount of damages is based upon a standard that will allow the finder of fact to calculate the amount of damages with reasonable certainty." *Id.* at 547-48, 356 S.E.2d at 586. Whether a party's evidence meets the

5

"reasonable certainty" standard is a question of law for the court. *Olivetti*, 319 N.C. at 548, 356 S.E.2d at 586-87. North Carolina courts have refused to award damages for lost profits "based upon hypothetical or speculative forecasts of losses." *Iron Steamer, Ltd. v. Trinity Restaurant, Inc.*, 110 N.C. App. 843, 847, 431 S.E.2d 767, 770 (1993).

In *Iron Steamer,* the North Carolina Court of Appeals reversed a trial court's award of lost profits for an unestablished resort restaurant where the award was based solely on the testimony of one of the defendants. The witness' "bases for estimating the lost profits at this restaurant in Pine Knoll Shores were his brief experience, less than one year, at a restaurant in another city, and his experience as a cook for the Ramada Inn in Pine Knoll Shores, which lasted about one year." *Id.* at 849, 431 S.E.2d at 771. The North Carolina Court of Appeals found "no factual basis upon which a jury could calculate lost profits with a 'reasonable certainty'" and that the witness' "estimation of lost profits is based on assumptions that are purely speculative in nature." *Id.*. The court in *Iron Steamer* acknowledged that in the context of an unestablished resort restaurant, "the relationship between lost profits and the income needed to generate such lost profits is peculiarly sensitive to certain variables" and therefore:

> proof of lost profits with reasonable certainty under these circumstances requires more specific evidence and thus a higher burden of proof. While difficult to determine, damages may be established with *reasonable certainty* with the aid of expert testimony, economic and financial data, market surveys and analysis, and business records of similar enterprises.

*Id.* (internal quotation omitted, emphasis in original).

In this case, SCDF relies upon pure speculation in forecasting its lost profits. Although it proffers the expert report of Dr. Michael P. Hughes, a full-time faculty member of Francis Marion University with a Ph.D. in finance, his report makes clear that his calculations are based

6

upon the figures provided to him by SCDF. *See* Economic Report of Michael P. Hughes [DE-72-3] at pp. 8-9 (explaining that counsel for SCDF provided him with a "pro forma financial statement forecasting pre-tax income and net cumulative cash flows for five years" and that his "analysis is based on the assumption that these figures are correctly and accurately forecasted."). Dr. Hughes' report indicates he excluded at least one of the figures provided by SCDF:

> I discussed the pro forma financial statement with the CEO of SCDF, Mark Wenick. Mr Wenick was unable to define what the $2,000,000 cash flow at the end of Year 5 represents (as listed under the heading "Financing & Principal Payment"). Because of this, I have excluded this amount from the Net Project Cash Flow for Year 5.

*Id.* at p. 9.

Mr. Hughes may be satisfied with SCDF's explanations for the various amounts in the pro forma financial statement; the court, however has not been given the benefit of *any* explanation for the figures contained in the statement. There is absolutely no explanation for how SCDF came to estimate that it would have enjoyed $372,300,000.00 in sales of real estate lots for the first five years of the project, or how it came to estimate the "Lodge Sales," "Hotel Sale" and "Retail Sales." There is no evidence before this court referencing any sort of market research or analysis or comparisons to similar developments. Although the court has no reason to question Dr. Hughes' calculations, those calculations are based solely upon SCDF's seemingly speculative forecast. There is absolutely nothing in evidence before this court that could be viewed as supporting SCDF's assumptions as to its future revenues. In short, SCDF has proffered insufficient evidence in support of its request for damages for lost profits.

7

# IV. CONCLUSION

It is hereby ORDERED, ADJUDGED AND DECREED that:

Plaintiff have and recover from Defendants Rebecca R. Cruse, Joseph K. Cruse, and Integrity Financial Services, Inc., the sum of $353,338.00,[3] jointly and severally, plus interest at the legally applicable rate from the date of judgment until paid.

Plaintiff's Motion for Default Judgment [DE-71] is hereby ALLOWED as to Plaintiff's claim for fraud against Defendants Rebecca R. Cruse, Joseph K. Cruse, and Integrity Financial Services, and all of Plaintiff's remaining claims against these Defendants are DISMISSED. The Clerk of Court is DIRECTED to enter judgment accordingly and close this case.

SO ORDERED, this the 12th day of January, 2010.

James C. Fox
Senior United States District Judge

---

[3] This sum includes: (1) the $315,000.00 earnest money paid to Integrity Financial Services' attorney; (2) interest in the amount of $14,338.00 paid to Four Oaks Bank & Trust Company; (3) $100,000.00 in earnest money paid to the sellers of the Pender County property, less (4) $76,000.00 paid to SCDF by the Franklin Group of South Florida. *See* Supplement I to Economic Report [DE-74].

8